*Birchard, J.
If the objection, that improper evidence was permitted to go to the jury, refers to tho abstract from the plaintiff’s books, the answer is, that it was not objected to at the trial as a mere copy, and tho objection not being then made, it is now too late. If made in timo, it is probable the defendant would have introduced tho original books, or have laid a proper foundation for the introduction of tho transcript, by showing that the plaintiffs had been duly served with notice to produce them. If tho objection relates to any other portion of the evidence, it will bo seen that, with the views we entertain of the merits of tho case, it was not well taken. The evidence all tended to establish the fact, that the original loan, as well as the paper upon which the suit was brought, was tainted by an illegal contract to pay interest at a rato greater than six per centum per annum, in advance.
Before proceeding to consider tho instructions of tho court to tho jury, it is proper to remark that on the trial, no questions of law were debated, the points only were made in order that they *13 might be considered, and determined here, with a notice to counsel, that, for the purpose of settling the questions of fact, the law would bo given to the jury as it had been settled on a former trial in the same court. It may also be observed that it was then supposed that the act of February 8, 1815 (2 Chase, 868), and the act of February 23,1816 (2 Chase, 923), recognized the plaintiff as a bank, and modified, and restricted to some extent, the powers tf the plaintiff. This impression may have obtained from the fact, that, on one of the preceding trials, the counsel for the plaintiff had claimed for her a franchise of banking, under the act of 1816. However, that may bo, it was on the part of the defendant claimed, that if such was not the fact, the plaintiff was an unauthorized banking company. Butit is now claimed, in support of this motion, that she is not bound by any of the provisions of the act of February 23, 1816, in consequence of her non-acceptance of the provisions and conditions therein contained. Lot us see what would be the effect of adopting this assumption. The plaintiff sues as an incorporated banking institution. All her powers are *those expressly granted by the act of incorporation, and those necessary to carry into effect the powers expressly granted. The act incorporating the Miami Exporting Company is to be found in 3 Chase’s Stat. 2010, and it may be searched without finding any express or specific grant of banking privileges. There is no language, and no clause in it, which, honestly construed, will boar any such interpretation. It must follow that if tKe plaintiff is thrown back upon the act of 1803, a new trial should be refused. Because in that event, no suit could bo maintained. All the bills, notes, etc., issued by her, and all her securities, fall within the provisions of the laws against unauthorized banking.
It is said, however, that the legislature has recognized her right of banking. To be of any validity, this recognition must appear by some legislative enactment. The only statutes to which we have been relerrod, that seem to be of any importance in connection with our present inquiry, are the two above cited. .
The act of 1815 (1 Chase’s Stat. 868,) section 1, provides, “that every bank, and banking company, whether chartered or unchartered, within this state,” which, at the taking effect of this act, had commenced the business of banking, by discounting paper, etc., should pay a tax of four per cent, on dividends.
Section 5 provides, that thereafter “ it shall not be lawful for *14 any individual, or company of individuals, to issue, and put in circulation, any note, or order, for the payment of money struck or printed on any engraved plate, and calculated to circulate as a bank bill, or note, unless such individual shall be by law specially authorized so to do, or unless such company of individuals shall be by law incorporated for that purpose; and all bonds, bills, notes, or written contracts given to, entered into with, or discounted by any such individual, or company of individuals, shall be, and the same are hereby declared null and void.”
Section 7 provided that until January 1,1818, the above section 5 should not be construed to extend to a company that had commenced “ bank business ” prior to January 1, 1815.
*The provisions of the foregoing sections imply that there were at that date banking companies doing business in the state, some being authorized to bank, and others not; and that of these, some, who were unauthorized to bank, were companies incorporated for other purposes. Hence the provision postponing the final operation of section 5, in the cases specified in section 7, to January 1,1818. This would give them time to close up their “bank business.” It is, moreover, an admitted fact that, in 1815, and prior thereto, the plaintiff was engaged in “bank business.” Her right to continue the business seems not to be recognized. It is merely tolerated for a limited period, and the act asserts the right, on the part of the state, to close all its banking operations on a given day, and inftho meantime, a right to subject it to taxation.
The act of February 23,1816, is somewhat complicated, and the whole act must be looked to, in order to give it a sound interpretation. The first fifteen sections incorporate so many banks by name, and specify their general powers. Some of theso had already, as unchartered companies, been engaged in business. From section 16 to section 40, the rights and duties of all are more particularly defined. Section 36'is in those words: “That the said corporations shall not take more than at the rate of six per cent, per annum in advance on their loans or discounts.” Section 40 extended the charters of all the incorporated banks until January 1, 1843, upon condition of their compliance, “in all respects, with the terms, requisitions, and provisions of this act.”
Section 42 reads thus: “ That on condition that the directors of the several banks incorporated by this act, and of the several banks, the charters of which are extended thereby, and also of the *15 Miami Exporting Company, shall accept of, and comply with, the conditions and provisions of this act, any bank or banks thus aeceptng or complying, shall be exempt from tax, etc.” Section 43 provides, that on a failure to comply with all and singular the requisitions and duties required of them respectively, according to the true intent and *meaning.of‘ the act, they shall forfeit all its advantages, privileges, and benefits. And by section 44, the Supremo Court has full power and jurisdiction, upon a writ of quo warranto, to hear and determine all questions touching such violation or forfeiture.
The Miami Exporting Company is nowhere else named in the act. But named as she is in section 42, we can not doubt the intention of the legislature to bind her by the provisions of section 31, which prohibited all the banks then chartered from taking more interest than at the rate of six per centum per annum in advance. That was one of the provisions of the act, and an important one. How can it be said that it was not to be complied with — not to be accepted as a part of the law of her creation, or that in fact it has not been so accepted, when such assertion, if true, makes her an unauthorized bank and liable to the penalties of the statutes against such institutions ? The facts of the case show that the plaintiff did accept the provisions of the act; did issue bank paper; did do business as a banking institution after January 1, 1818, notwithstanding section 5 of the act of 1815. And admitting that she did not comply with many of the conditions of the act of 1816, and has been remiss in observing, “all and singular, the requisitions and duties required by the law, according to its ‘true intent and meaning,’ ” it does not appear that the privileges which that act extended to her had been declared forfeited by a judgment of this court. How then stand the instructions? The first instruction was given substantially as requested, and, if erroneous, the error was in favor of, not to .the prejudice of plaintiff. ■ The second was rightly refused, and the remarks upon the first proposition, upon which instruction was asked, together with the instruction given upon the first point, were strictly in accordance with the law as settled in the Bank of Ohillicothe v. Swayno et al., 8 Ohio, 261. The refusal to instruct the jury that the plaintiff might recover upon the draft for. $2,700, as requested in the fourth proposition of counsel, was not erroneous. The correct instruction was given. It was, in ^substance, that if the paper was discounted as a mere device to obtain more than *16 six por contum interest, in advance, the contract was void, other, wise not. The jury were thus left to find, upon the evidence, whether this whole series of paper was not part and parcel of one transaction, and whether, at the inception of that transaction, the corrupt and unlawful-agreement was made that plaintiff, by such means, should obtain a prohibited rate of interest. They found such to be the fact, and upon sufficient evidence. The circumstance that the draft of $2,700, was a renewal of the former one, and discounted at six per centum, made no difference. For the proof was clear that it embraced a part of the original and prohibited excess, and that, too, in pursuance of the original unlawful agreement. To allow a device of this nature to defeat a salutary provision of law, and to sanctify usury by banks, would be equivalent, in many eases, to relieving them from all restraint. It would make an important distinction where a substantial difference does not exist.
Lastly, did the court err in instructing the jury that the plaintiff could not recover for the money loaned, upon the common counts?
This is a new question, and one that involves important considerations. It has been said, with much propriety, that it is wrong for the defendant to refuse a compensation for the money actually received. But, with equal propriety, it may bo said to be wrong in the plaintiff to do what the law forbids. Both plaintiffs and defendant were violators of the law — the one in loaning, and the other in receiving, on an illegal contract. Can the transaction bo dissected so as to enable us to separate the good from the evil, to reject the bad, and enforce the remainder? The money was all received at once; was a single transaction, and the whole contract is alike tainted with-the fraud and illegality. Again, the parties made their own contract. True, it was void for want of capacity or power in the plaintiff to make it; void because it was a fraud upon the law continuing the plaintiff’s existence as a bank. In this view of the case can it be seriously contended that the *law will make out of their illegal contract a legal one; that it will imply a contract differing substantially from the express contract made by them? Clearly this can not be. We hold, then, that as to the money actually received by the defendant in this case, both parties are in pari delicto, and the general rule in such case applies that no action can be maintained.
*17 As to the point, that if the original loan was not tainted with usury, the plaintiff might recover upon the common counts, although the subsequent paper was so tainted, we believe no difference of opinion exists. According to our recollection, the jury were so instructed, and they have found that the loan was originally fraudulent. Now does the testimony sustain their finding? * As shown by the plaintiff’s books, the net proceeds of the discount were $9.800 — $200 being reserved, which was the true rate of interest taken in advance on a loan of $10,000. The witness,- Barr, sajrs, that he negotiated the loan: that the agreement was to discount drafts on New York instead of notes, in order that more than six per cent, interest should be procured, and there was no conflicting evidence upon the point. Ho also stated his belief that $100 mor« than was shown by the abstract was retained of the original loan. Certainly the verdict could not have been different, without being against evidence. Motion overruled.